NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE: JACOBY AIRPLANE CRASH LITIGATION | Hon. Harold A. Ackerman<br><br>Civ. No. 99-6073 (HAA)<br><br>**OPINION & ORDER** |

**ACKERMAN, Senior District Judge:**

This matter comes before the Court on a motion *in limine* by Defendant S-TEC Corporation (Docket No. 316), and joined by Defendant United States of America (Docket No. 320) (collectively "Defendants"), to exclude evidence of the Jacoby Plaintiffs' pre-impact fright. Defendant United States of America ("U.S." or the "Government") also moves (Docket No. 309), joined by S-TEC (Docket No. 313), for judgment as a matter of law on all claims for post-impact injuries and moves *in limine* to exclude any statements inferring that the Jacobys survived impact. For the following reasons, Defendants' motions are DENIED.

*Background*

On November 26, 1999 at 10:49am, Itzhak Jacoby piloted a single-engine, propeller-driven airplane containing his wife Gail and their thirteen-year-old daughter Atira from the Linden airport. The weather at that time consisted of light rain and mist, with two-and-a-half

miles of visibility.

Upon take-off, air traffic control ("ATC") instructed Jacoby to maintain 5,000 feet, but a few seconds later revised the instruction for him to maintain 2,000 feet. Thirty-four seconds later, ATC instructed Jacoby to turn left to a heading of 270 degrees. Jacoby did not immediately respond. After two more attempts to communicate with Jacoby, he finally responded by saying "I have a problem." He clarified that he had a "gyro problem momentarily," but indicated that it appeared to be corrected. Jacoby speculated that he "must have had water in the system."

ATC then directed Jacoby to turn to a heading of 270 degrees and climb to and hold at 2,000 feet. ATC had to reissue the instruction one or two more times, without response from Jacoby. Finally, Jacoby responded again with "I have a problem," which turned out to be the last recorded transmission from Jacoby. At some point in the exchange of transmissions, Jacoby requested from ATC to be granted a higher altitude clearance, but ATC denied that request.

In the last thirty seconds of radar data, the plane reached a maximum altitude of 2,800 feet and 161 knots of airspeed, before beginning a final descent that reached approximately 10,000 feet-per-minute before damaging a chimney on a three-story building, crashing into another three-story building at the corner of Brenner and Kent Streets in Newark, and ultimately breaking apart and coming to a rest at the end of Kent Street. The total flight time lasted approximately 4-6 minutes.

The three plane occupants died at the scene. Two individuals on the ground suffered serious injuries, with one dying approximately eight weeks after the accident. An additional twenty-five people suffered minor injuries. Approximately eighteen buildings were damaged in some manner, ranging from structural damage to broken windows. Three of those buildings were

condemned and subsequently demolished. In addition, eight vehicles were damaged, some destroyed.

      A toxicology report revealed that Jacoby had concentrations of a barbiturate known as butalbital in his urine, kidney and spleen; blood samples were not available for examination. Discovery revealed that Jacoby took Fiorinal, a prescription headache medication containing butalbital. Jacoby was prescribed over 6,000 tablets of Fiornal between 1992 and October 1999, with approximately 800 tablets being dispensed in 1999 alone. The most frequent adverse reactions to Fiornal are drowsiness and dizziness. Jacoby stated on his FAA application that he was not taking any medication, prescription or otherwise. In addition, he did not indicate any suffering from severe or frequent headaches.

      Jacoby's airplane contained three gyroscopically-driven instruments: the attitude indicator, the horizontal situation indicator ("HSI") and the turn coordinator. Defendant S-TEC manufactured the turn coordinator on Jacoby's plane. The turn coordinator, one component of the autopilot system, provides information about the rate and direction of a turn.

      Plaintiffs brought this action against S-TEC and the Government, claiming that the combination of a faulty turn indicator and denial of higher altitude clearance caused the plane to crash. S-TEC moves *in limine* to exclude evidence of any pre-impact fright that the Jacobys may have suffered, on the basis that New Jersey law allegedly does not recognize pre-impact fright as a compensable injury and therefore any such evidence would be irrelevant. Relatedly, the Government moves for judgment as a matter of law on all claims for post-impact injuries and also moves *in limine* to exclude any statements that the Jacobys survived the impact with the ground. S-TEC joins in the Government's motion and, correspondingly, the Government joins in

S-TEC's motion.

*Analysis*

*A. Pre-Impact Damages*

As a general matter, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Evidence that is not relevant is not admissible. Fed. R. Evid. 402. Even relevant evidence may be excluded if it is more prejudicial than probative. Fed. R. Evid. 403. Prejudicial means something more than merely harmful; it refers to the negative consequence of unfair prejudice. *See Ansell v. Green Acres Contracting Co.*, 347 F.3d 515, 525 (3d Cir. 2003) ("[T]he . . . prejudice against which the law guards [is] . . . *unfair* prejudice . . . prejudice of the sort which cloud[s] impartial scrutiny and reasoned evaluation of the facts, which inhibit[s] neutral application of principles of law to the facts as found . . . . [P]rejudice does not simply mean damage to the opponent's cause. If it did, most relevant evidence would be deemed prejudicial.") (internal quotation marks omitted). Questions of relevancy are committed to the discretion of the trial court. *Pfeiffer v. Marion Ctr. Area Sch. Dist.*, 917 F.2d 779, 781 (3d Cir. 1990); *see also Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 110 (3d Cir. 1999); *United States v. Donley*, 878 F.2d 735, 737 (3d Cir. 1985).

The Court will apply the substantive law of New Jersey because the crash occurred in New Jersey and this case comes before the Court on a diversity basis, at least as to S-TEC. With respect to the Government, the Federal Tort Claims Act (the "FTCA") provides a remedy against

the United States for injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b) (emphasis added). Therefore, liability under the FTCA only arises if a private party would be liable to the plaintiff under the law of the state where the conduct actually occurred. *Merklin v. United States*, 788 F.2d 172, 173 (3d Cir. 1986). Thus, New Jersey law applies here, as to both S-TEC and the Government, because the airplane crash occurred in Newark, New Jersey.

Neither the New Jersey Supreme Court nor any other New Jersey state court has ever addressed, either directly or tangentially, the issue of pre-impact fright. Similarly, no federal court has ever interpreted or even attempted to interpret how the New Jersey Supreme Court would rule on the issue. As a result, this Court must attempt to divine whether the New Jersey Supreme Court would interpret the state's Survivor's Act to allow for recovery for pre-impact fright or fear of impending death.

New Jersey's Survivor's Act provides:

> In those actions based upon the wrongful act, neglect, or default of another, where death resulted from injuries for which the deceased would have had a cause of action if he had lived, the executor or administrator may recover all reasonable funeral and burial expenses <u>in addition to damages accrued during the lifetime of the deceased.</u>

N.J.S.A. § 2A:15-3 (emphasis added).

The New Jersey Supreme Court in *Smith v. Whitaker* did not address pre-impact fright, but did provide the most recent and clearest articulation of the court's interpretation of the Survivor's Act. *See Smith v. Whitaker*, 160 N.J. 221 (1999). Specifically, *Smith* addressed the

5

issue of "whether a survival action will lie where . . . the plaintiff's death appears to have been actually or nearly simultaneous with defendant's injury-causing conduct . . . [and] whether a claim for punitive damages may be asserted when no compensatory damages have been awarded for pain and suffering in the underlying survival action." *Id*. at 226.

The court noted that "the usual measure of damages under the Survivor's Act" is "a plaintiff's pain, suffering and apprehension of impending death." *Id*. In context, the court's statement can be understood to refer to the apprehension of impending death *after* the impact, but the facts of *Smith* did not give rise to any pre-impact analysis such that the court's statement should be considered an express holding delimiting the scope of apprehension. Also worth noting, the *Smith* court similarly stated that "[t]he Survivor's Act was intended to be supplementary to the [Wrongful] Death Act . . . by allowing the decedent's estate to recover any loss to the decedent that accrued between injury and death." *Id*. at 234. Defendants interpret the *Smith* court's statement on this point as an express holding that pre-impact pain and suffering is not allowed under the Survivor's Act. In support of that argument, Defendants cite a string of state and federal cases which hold that pain and suffering damages are limited to that period of time between injury and death. While Defendants have accurately quoted the holdings of these cases, they have failed to appreciate their scope and context. This Court does not read the *Smith* opinion in the same manner as Defendants because the New Jersey Supreme Court was not addressing a factual situation where pre-impact was even at issue. To read *Smith* or any of the other cases as so holding would be to blindly ignore the context in which such holdings were rendered. In addition, as discussed below, the evolution of New Jersey emotional distress law further undermines Defendants' interpretation.

6

Moreover, *Smith* held that "[t]he Survivor's Act, in contrast to the Wrongful Death Act, contains no express limitation on the types of damages recoverable under the statute." *Id*. As the New Jersey Supreme Court explained, "[i]n 1855, New Jersey passed the . . . Survivor's Act, now codified at N.J.S.A. § 2A:15-3, allowing a decedent's representatives the right to bring an action for trespass to person or property in the same manner as if the decedent had been living." *Id*. at 233. "Unlike a wrongful death action, which is a derivative action arising in favor of beneficiaries named under that act . . . the Survivor's Act preserves to the decedent's estate any personal cause of action that decedent would have had if he or she had survived." *Id*.

With respect to the issue of punitive damages, the *Smith* court noted that most jurisdictions allow such damages in survival actions because "logic dictates that if a wrongdoer may be punished if his victim lives, then surely he should not escape retribution if his wrongful act causes a death." *Id*. at 234 (quoting *Leahy v. Morgan*, 275 F. Supp. 424, 425 (N.D. Iowa 1967)). Arguably, the same logic applies in the instant matter such that any emotional distress claim that the Jacobys could have brought regarding pre-impact fear had they lived should likewise be compensable in death. Therefore, it is necessary to analyze New Jersey law regarding emotional distress claims in analogous situations.

The New Jersey Superior Court, in *Ortiz v. John D. Pittenger Builder, Inc.*, provided a thorough history of the development of emotional distress claims generally in New Jersey. 382 N.J. Super. 552, 558-59 (2004). The court pointed to the century-old case of *Ward v. West Jersey & S.R. Co.* as the first case to address the issue of negligently induced fright. *Ward* ultimately held that "there could be no recovery for 'the mere apprehension of personal injuries, which are not in fact received.'" *Ortiz*, 382 N.J. Super. at 558 (quoting *Ward v. West Jersey & S.R. Co.*, 65

7

N.J.L. 383 (Sup. Ct. 1900)). A few years later, "the court extended the *Ward* contact rule to permit fright injuries when there is *any* impact, however slight or inconsequential." *Id.* (citing *Porter v. Delaware, L. & W.R. Co.*, 73 N.J.L. 405 (Sup. Ct. 1906)). Sixty years later, in *Falzone v. Busch*, the New Jersey Supreme Court altogether abandoned the "*Ward* contact rule by permitting a fright recovery despite lack of physical contact." *Ortiz*, 382 N.J. Super. at 559 (citing *Falzone v. Busch*, 45 N.J. 559 (1965)).

Specifically, *Falzone* addressed the issue of whether a "plaintiff may recover for bodily injury or sickness resulting from fear for her safety caused by a negligent defendant, where the plaintiff was placed in danger by such negligence, although there was no physical impact." *Falzone*, 45 N.J. at 561. The Supreme Court noted that "New Jersey courts have . . . generally adhered to the notion that fright can[] be the proximate cause of substantial physical injury." *Id.* at 564. The court recognized that "there may be difficulties in determining the existence of a causal connection between fright and subsequent physical injury and in measuring the extent of such injury." *Id.* at 566. Nevertheless, "difficulty of proof should not bar the plaintiff from the opportunity of attempting to convince the trier of fact of the truth of her claim." *Id.* As a result, the *Falzone* court ultimately and expressly held:

> that where negligence causes fright from a reasonable fear of immediate personal injury, which fright is adequately demonstrated to have resulted in substantial bodily injury or sickness, <u>the injured person may recover if such bodily injury or sickness would be regarded as proper elements of damage had they occurred as a consequence of direct physical injury rather than fright</u>. Of course, where fright does not cause [s]ubstantial bodily injury or sickness, it is to be regarded as too lacking in seriousness and too speculative to warrant the imposition of liability.

*Id.* at 569 (emphasis added).

8

Based on the evolution of New Jersey caselaw with respect to emotional distress, from *Ward* through *Falzone*, combined with *Smith v. Whitaker*, this Court concludes that the New Jersey Supreme Court, were it squarely faced with this issue, would rule that the Jacobys are entitled to the opportunity to attempt to convince the trier of fact that they experienced pre-impact fright. It is also noteworthy that several other jurisdictions have grappled with this issue and concluded that pre-impact fright is recoverable under their respective and comparable Survivor's Acts. *See Beynon v. Montgomery Cablevision Ltd. P'ship*, 351 Md. 460, 507 (1997) (collecting and thoroughly analyzing pre-impact cases from across the United States); *see also, e.g., Haley v. Pan Am. World Airways*, 746 F.2d 311 (5th Cir. 1984) (interpreting Louisiana law to allow for pre-impact fright during airplane crash); *Shu-Tao Lin v. McDonnell Douglas Corp.*, 742 F.2d 45 (2d Cir. 1984) (interpreting New York law to allow for pre-impact fright during airplane crash); *Nelson v. Dolan*, 230 Neb. 848, 857-59 (1989) (holding "that there exists no sound legal or logical distinction" precluding a plaintiff from recovering for post-injury pain and suffering and pre-impact fright and also finding a sufficient "basis upon which the jury certainly need not, but could, if it wished, find that decedent . . . apprehended and feared his impending death during the 5 seconds his motorcycle" was locked with another moving vehicle before decedent was killed); *Yowell v. Piper Aircraft*, 703 S.W.2d 630, 634 (Tex. 1986) (affirming Texas judgment for "mental anguish the decedents suffered from the time of the plane's break-up until it hit the ground"); *but see Fogarty v. Campbell 66 Express, Inc.*, 640 F. Supp. 953 (D. Kan. 1986) (interpreting Kansas law as to not allow for pre-impact fright in auto accident despite evidence indicating 60 feet of yaw marks prior to the collision point); *In re Air Crash Disaster Near Chicago, Ill. on May 25, 1979*, 507 F. Supp. 21, 23 (N.D. Ill. 1980) (noting that because

9

"under Illinois law, an individual can recover for emotional distress or suffering only when the distress is caused by a physical injury, plaintiff cannot recover for the fright and terror . . . [she] may have experienced in anticipation of physical injury").

On this point, Defendants contend that there is no evidence "that the decedents suffered any physical injuries prior to impact." (Defs.' Reply Br. at 4.)  Defendants' statement demonstrates a fundamental misunderstanding of what must be proved by the Jacoby Plaintiffs with respect to pre-impact fright.  *See Beynon*, 351 Md. at 507 ("The physical injuries that accompanied the decedent's pre-impact fright are the fatal injuries he sustained as a result of the feared impact–the automobile accident.") The Jacoby Plaintiffs need not present evidence that the Jacobys, for example, suffered a heart attack or passed out from the fright before the plane crashed.  Instead, they must present evidence that Defendants' negligence proximately caused the "fright from a reasonable fear of immediate personal injury."  *Falzone*, 45 N.J. at 569; *see also Beynon*, 351 Md. at 507 ("The fact that the fright or mental anguish in this case preceded the crash that resulted in the decedent's fatal bodily injuries does not affect causation.")

In addition, the fright must have resulted in "substantial bodily injury."  *Id*.  There is no dispute that the Jacobys suffered substantial bodily injury.  Thus, the balance of Plaintiffs' proof requirement falls on demonstrating that they suffered fright from a reasonable fear of immediate personal injury proximately caused by Defendants' negligence.  Therefore, the Court finds that the Jacoby Plaintiffs are not barred, as a matter of law, from recovering for pre-impact fright.  It should be noted, however, that this element of damages known as pre-impact fright "should compensate a decedent's fright, not the resultant death." *Beynon*,  351 Md. at 508.

Finally, contrary to Defendants' assertion, Plaintiffs do have evidence that is at least

relevant to a consideration of whether the Jacobys experienced such fright. Specifically, the Jacoby Plaintiffs point to the audio transmission in which Mr. Jacoby can be heard to take several deep breaths just prior to impact. Such evidence is certainly relevant to a factual determination regarding fright. *See* Fed. R. Evid. 401; *see also Thomas v. State Farm Ins. Co.*, 499 So. 2d 562, 567 (La. App. 2d Cir. 1986) (vehicle passenger, who "gasped" and grabbed the driver's arm when she saw the oncoming vehicle, allowed to attempt recovery for pre-impact fright). Moreover, the Court finds that the probative value of such evidence is not outweighed by any unfair prejudice. *See* Fed. R. Evid. 403. As a result, the Court will deny Defendants' motion *in limine* to exclude evidence of pre-impact fright.

### B. Post-Impact Damages

Under the Survivor's Act, New Jersey allows "recovery for conscious pain and suffering whenever it can be shown the injured person survived her injuries, however briefly." *Smith*, 160 N.J. at 236. In addition to pain and suffering, a plaintiff may recover for hedonic damages, which are damages for the loss of enjoyment of life. Hedonic damages differ from pain and suffering in that the injured person need not be conscious in the interval between injury and death. *Eyoma v. Falco*, 247 N.J. Super. 435, 445-46 (App. Div. 1991); *see also Alexander v. Whitman*, 114 F.3d 1392, 1399 (3d Cir. 1997) (citing *Eyoma*). But hedonic damages, under the Survivor's Act, are "available only to the extent that [the injured] survived the tortious act that proximately caused her death for some period of time." *Thomas v. Ford Motor Co.*, 70 F. Supp. 2d 521, 526 (D.N.J. 1999).

The period of time that the injured party must survive the tort can be very short. In the

Appellate Division's opinion in *Smith*, the court analyzed the issue of what constituted an instantaneous death and noted that "[d]eath rarely may be instantaneous in fact." *Smith v. Whitaker*, 313 N.J. Super 165, 185 (1998), *aff'd*, 160 N.J. 221 (1999). The Appellate Division also noted that, generally, the plaintiff "has the burden of proving that death was not instantaneous . . . [h]owever, the plaintiff, in carrying this burden, is favored by the presumption of continuing life until the contrary is proved." *Id*. at 186-87. This Court is unable to reconcile how the plaintiff has the burden of proving a non-instantaneous death while likewise being favored by a presumption of continuing life. Nevertheless, the Appellate Division clearly articulated at multiple points throughout its opinion that New Jersey recognizes "a presumption that life continues until evidence is presented sufficient to establish that death occurred at some specific time." *Id*. at 187. The court emphasized this point by stating that "if the decedent had 'died in . . . one-tenth of a second as a result of the tort,' [then] the instant of the tort and the instant of death 'did not occur in the same split second.'" *Id*. at 186 (quoting *Justin v. Ketcham*, 297 Mich. 592, 595 (1941)). This Court views the pragmatism of such a holding as somewhat dubious, but nevertheless understands that a line must be drawn somewhere. It goes without saying, however, that while survival for one-tenth of a second may technically qualify the injured party to recover under the Survivor's Act, the lesser the seconds (or tenths thereof), the lesser the damages recoverable.

      After recounting the injuries suffered by the Jacobys in gruesome detail, Defendants declare that "to argue death was other than immediate under such facts approaches the level of ridiculous: the brain was missing from one decedent, the heart was shredded in another, and the skull was fragmented in the third." (U.S.'s Br. at 10, n.3.) Plaintiffs counter that Defendants

12

have conflated at least three impacts into one.  Evidence of such conflation can be found in the fact that the Government styled its motion as a "motion *in limine* to exclude any statements inferring the Jacobys survived the impact with the ground."  (Government's Br. at Caption Page (emphasis added).)  At the end of its brief, however, the Government requests that the Court preclude Plaintiffs from making any "statements suggesting the decedents somehow survived beyond the point of impact."  (Government's Br. at 12 (emphasis added).)  Plaintiffs further, and correctly, argue that, regardless of the number of impacts, the relevant inquiry is the interval between the time of the commission of the tort and the death.  *See Smith*, 313 N.J. Super. at 186 ("Under N.J.S.A. 2A:15-3, the pertinent time period is also 'between the time that the tort was committed and death.'") (citations omitted).

      Plaintiffs present evidence that the Jacoby airplane damaged a home's chimney approximately eight blocks from the crash site, thus constituting the first impact.  Subsequently, the plane hit a three-story building at Brenner and Kent Streets.  It is not clear to the Court, however, whether the fuselage, containing the Jacobys, broke apart upon impact with the building and tumbled down the street, whether the wings were sheered by the building and then the plane hit the ground, coming to stop some 760 feet later, or whether some other sequence of events occurred.  Thus, there is a factual issue for the trier of fact.

      Regardless of the sequence or number of impacts, Plaintiffs argue that "[n]o evidence pinpoints exactly when the Jacobys suffered their first physical injuries nor exactly when they died." (Pls.' Br. at 11.)  Moreover, Plaintiffs contend that there is a reasonable factual dispute regarding whether the Jacobys suffered physical injuries prior to any of the impacts with the ground or buildings because the speed of the descent–approximately 10,000 feet-per-

13

minute–could reasonably be inferred as causing injuries due to the "counteraction of their restraints to the action of the aircraft as it rolled to the right."  (*Id*. at 12.)

In further support of their argument, Defendants point to the facts of *Smith*, noting that if the court could find death to be instantaneous there, the deaths of the Jacobys are clearly instantaneous as well.  In *Smith*, a 36,000-pound tanker truck collided with a passenger vehicle with such force that the truck drove over the top of the car, killing the car's occupant.  *Smith*, 160 N.J. at 226.  The trial court dismissed the plaintiff's claim for pain and suffering as well as hedonic damages because "'there is nothing in the medical reports or in the observations of doctors, nurses, emergency personnel, or any of those people that would suggest that there was conscious pain and suffering.'" *Id*. at 228 (quoting trial judge without citation).  But a review of the Appellate Division's opinion also reveals that the plaintiff's attorney openly declared that he "'couldn't produce evidence of conscious pain and suffering of the decedent.'" *Smith*, 313 N.J. Super. at 178 (quoting plaintiff's attorney without citation).

Moreover, the Appellate Division, in analyzing the trial judge's ruling on this issue, noted:

> The [trial] judge may have somewhat over-credited the evidence when he said that, "at least insofar as the proofs are concerned," there was "no question" that Mrs. Robbins "died instantly." Granted, there was "no proof to the contrary," in that there was "no proof . . . that she was alive after the impact for any period of time." However, giving plaintiff the benefit of the presumption that life continues until the contrary is shown, the [trial] judge might have assumed that Mrs. Robbins was alive for a period of time, albeit brief, after the impact between Coastal's oil truck and her automobile.

*Smith*, 313 N.J. Super. at 189.

As noted previously, the primary issue in *Smith* centered on whether punitive damages

14

were available under the Survivor's Act. Thus, the Appellate Division's statement appears to indicate that the trial judge allowed punitive damages, despite finding death instantaneous and precluding the issue from going to the jury, because ostensibly the trial judge thought that the decedent may have survived for such a brief period after impact that it did not warrant pain and suffering or hedonic damages, but did survive just long enough to allow for punitive damages to attach. Theoretically, such a ruling could give this Court sufficient room to conclude that the few seconds that transpired between damaging the chimney and coming to a rest at the recognized crash site eight blocks away are insufficient to allow for recovery under the Survivor's Act. Unfortunately for Defendants, the Appellate Division's statement on this point is, at best, dicta.

The Appellate Division is clearly critical of the lower court's ruling in its admonition that the trial judge "may have somewhat over-credited the evidence" regarding instantaneous death. Nevertheless, the Appellate Division, and subsequently the New Jersey Supreme Court, may not have overturned the trial court's ruling because it likely was not raised on appeal. It likely was not raised on appeal because plaintiff's counsel clearly conceded that he did not have evidence to prove the death was not coterminous with the impact, which was identical to the tort in that case.

The same facts are not present in the instant matter. Plaintiffs have made no concession that they cannot produce evidence to demonstrate conscious pain and suffering. On the contrary, as stated above, Plaintiffs note multiple points in the airplane's final descent that reasonably could have resulted in injury to the Jacobys prior to the impact that ultimately killed them.

While the Court continues to eye with circumspection the quantum of damages reasonably recoverable, the New Jersey courts' decision to adopt a "split-second" definition of what constitutes a non-instantaneous death, along with the presumption of continuing life, leaves

this Court no alternative but to allow Plaintiffs to submit such evidence to the trier of fact for a factual determination as to how much those seconds, or tenths of a second, are worth.  As a result, the Court will deny Defendants' motion for judgment as a matter of law as to all post-impact injuries and the Court will deny Defendants' motion *in limine* to exclude any statements that the Jacobys survived impact.

### *Conclusion*

For the foregoing reasons, Defendants' motions to exclude evidence of the Jacobys' pre-impact fright (Docket Nos. 316 & 320) are hereby DENIED.  In addition, Defendants' motions for judgment as a matter of law as to all post-impact injuries and to exclude any statements inferring that the Jacobys survived impact (Docket Nos. 309 & 313) are hereby DENIED.

Newark, New Jersey
Dated: December 4, 2006

/s/ Harold A. Ackerman
U.S.D.J.