NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
)   Hon. Harold A. Ackerman
IN RE: JACOBY AIRPLANE CRASH     )
LITIGATION                    )   Civ. No. 99-6073 (HAA)
                            )
                            )   **OPINION & ORDER**
_____ )

**ACKERMAN, Senior District Judge:**

     This matter comes before the Court on several motions *in limine* by Plaintiffs to exclude evidence of Itzhak Jacoby's Israeli military record (Docket No. 233); to exclude evidence regarding Itzhak Jacoby's failure to disclose certain medical conditions in obtaining his medical certificate to fly (Docket No. 246); to exclude the use of deposition testimony from various individuals located more than 100 miles away (Docket No. 243); and to bar testimony of nine S-TEC witnesses, who were not formally disclosed prior to the close of discovery (Docket No. 240). Defendants S-TEC and the United States of America (collectively "Defendants") responded to the motions. For the following reasons, Plaintiffs' motions are granted in part and denied in part.

## *Background*

     On November 26, 1999 at 10:49am, Itzhak Jacoby piloted a single-engine, propeller-

driven airplane containing his wife Gail and their thirteen-year-old daughter Atira from the Linden airport. The weather at that time consisted of light rain and mist, with two-and-a-half miles of visibility.

Upon take-off, air traffic control ("ATC") instructed Jacoby to maintain 5,000 feet, but a few seconds later revised the instruction for him to maintain 2,000 feet. Thirty-four seconds later, ATC instructed Jacoby to turn left to a heading of 270 degrees. Jacoby did not immediately respond. After two more attempts to communicate with Jacoby, he finally responded by saying "I have a problem." He clarified that he had a "gyro problem momentarily," but indicated that it appeared to be corrected. Jacoby speculated that he "must have had water in the system."

ATC then directed Jacoby to turn to a heading of 270 degrees and climb to and hold at 2,000 feet. ATC had to reissue the instruction one or two more times, without response from Jacoby. Finally, Jacoby responded again with "I have a problem," which turned out to be the last recorded transmission from Jacoby. At some point in the exchange of transmissions, Jacoby requested from ATC to be granted a higher altitude clearance, but ATC denied that request.

In the last thirty seconds of radar data, the plane reached a maximum altitude of 2,800 feet and 161 knots of airspeed, before beginning a final descent that reached approximately 10,000 feet-per-minute before damaging a chimney on a three-story building, crashing into another three-story building at the corner of Brenner and Kent Streets in Newark, and ultimately breaking apart and coming to a rest at the end of Kent Street. The total flight time lasted approximately 4-6 minutes.

The three plane occupants died at the scene. Two individuals on the ground suffered serious injuries, with one dying approximately eight weeks after the accident. An additional

twenty-five people suffered minor injuries. Approximately eighteen buildings were damaged in some manner, ranging from structural damage to broken windows. Three of those buildings were condemned and subsequently demolished. In addition, eight vehicles were damaged, some destroyed.

A toxicology report revealed that Jacoby had concentrations of a barbiturate known as butalbital in his urine, kidney and spleen; blood samples were not available for examination. Discovery revealed that Jacoby took Fiorinal, a prescription headache medication containing butalbital. Jacoby was prescribed over 6,000 tablets of Fiornal between 1992 and October 1999, with approximately 800 tablets being dispensed in 1999 alone. The most frequent adverse reactions to Fiornal are drowsiness and dizziness. Jacoby stated on his FAA application that he was not taking any medication, prescription or otherwise. In addition, he did not indicate any suffering from severe or frequent headaches.

Jacoby's airplane contained three gyroscopically-driven instruments: the attitude indicator, the horizontal situation indicator ("HSI") and the turn coordinator. Defendant S-TEC manufactured the turn coordinator on Jacoby's plane. The turn coordinator, one component of the autopilot system, provides information about the rate and direction of a turn.

Plaintiffs brought this action against S-TEC and the Government, claiming that the combination of a faulty turn indicator and denial of higher altitude clearance caused the plane to crash. Plaintiffs move *in limine* to exclude various evidence, deposition testimony and individuals from trial. The Court will address four of Plaintiffs' *in limine* motions in this Opinion and Order. Subsequent Opinions and Orders will address the parties' remaining twenty-two *in limine* motions and one summary judgment motion.

3

*Analysis*

As a general matter, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Evidence that is not relevant is not admissible. Fed. R. Evid. 402. Even relevant evidence may be excluded if it is more prejudicial than probative. Fed. R. Evid. 403. Prejudicial means something more than merely harmful; it refers to the negative consequence of unfair prejudice. *See Ansell v. Green Acres Contracting Co.*, 347 F.3d 515, 525 (3d Cir. 2003) ("[T]he . . . prejudice against which the law guards [is] . . . *unfair* prejudice . . . prejudice of the sort which cloud[s] impartial scrutiny and reasoned evaluation of the facts, which inhibit[s] neutral application of principles of law to the facts as found . . . . [P]rejudice does not simply mean damage to the opponent's cause. If it did, most relevant evidence would be deemed prejudicial.") (internal quotation marks omitted). Questions of relevancy are committed to the discretion of the trial court. *Pfeiffer v. Marion Ctr. Area Sch. Dist.*, 917 F.2d 779, 781 (3d Cir. 1990); *see also Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 110 (3d Cir. 1999); *United States v. Donley*, 878 F.2d 735, 737 (3d Cir. 1985).

The Court will apply the substantive law of New Jersey because the crash occurred in New Jersey and this case comes before the Court on a diversity basis, at least as to S-TEC. With respect to the Government, the Federal Tort Claims Act (the "FTCA") provides a remedy against the United States for injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in

4

accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)

(emphasis added).  Therefore, liability under the FTCA only arises if a private party would be

liable to the plaintiff under the law of the state where the conduct actually occurred.  *Merklin v.*

*United States*, 788 F.2d 172, 173 (3d Cir. 1986).  Thus, New Jersey law applies here, as to both

S-TEC and the Government, because the airplane crash occurred in Newark, New Jersey.


### A. Israeli Military Record

Evidence shows, and Plaintiffs admit, that Dr. Jacoby told various friends and family,

including his sole surviving daughter Orit Jacoby Carroll, that he was a fighter pilot in the Israeli

Air Force ("IAF") and that he was shot down during the Six Day War.[1]  The truth of Dr. Jacoby's

assertion is the subject of some dispute.  Ms. Carroll, of course, believes her father was telling

the truth.  But Defendants have deposed Moria Avnimelech, who claims to have been married to

Dr. Jacoby for three months during 1967, and who testified that Dr. Jacoby was not a pilot in the

IAF at all, but instead was a meteorologist for the military.  Notably, Ms. Carroll had never heard

of Ms. Avnimelech before this litigation.

Defendants assert that "discovery has revealed that Dr. Jacoby habitually exaggerated his

piloting abilities by falsely claiming he was a fighter pilot in the Israeli Air Force."  (Defs.' Br. in

Opp. at 4.)  Defendants therefore "seek to introduce this evidence at trial as proof that Dr.

Jacoby's piloting error and incompetence contributed to the crash."  (*Id.*)  Defendants assert that

they do not seek to introduce such evidence as character evidence.  Instead, they want to use this

---

[1] The Six Day War is a reference to the June 1967 military conflict between Israel and
certain Arab states, namely Egypt, Jordan, Iraq and Syria.

evidence to prove that "Mr. Jacoby was an incompetent pilot who misjudged his abilities on the date in question, lost control of his airplane and ultimately crashed." (*Id*. at 6.) Defendants argue that the alleged lies he told about his military service record "expose an inflated and overblown perception of his flying abilities. Believing his own stories, Dr. Jacoby had convinced himself he could fly under any circumstances and . . . [thus] decided . . . to fly in dangerous weather conditions." (*Id*.) Thus, Defendants want to present this evidence as relevant to support their theory of causation.

Plaintiffs vigorously refute Defendants' assertion of relevance regarding Dr. Jacoby's claimed military record. Plaintiffs first argue that such evidence is irrelevant because they claim it is "[in]appropriate to inject a disputed extraneous issue concerning a 40-year-old war record into this case." (Pls.' Reply Br. at 2.) Second, Plaintiffs argue that Defendants may challenge Dr. Jacoby's competence as a pilot all they want, but using an exaggerated war record to do so is irrelevant because it is "speculation unsupported by logic." (*Id*.)

Starting with Plaintiffs' second argument, even if the Court were to agree that Defendants' argument on this evidence was speculative, that would not necessarily render the evidence irrelevant. Instead, Rule 401 is liberally construed on questions of relevance such that even illogical speculation has a "tendency to make the existence of any fact . . . more or less probable." *See* Fed. R. Evid. 401.

The Court in no way intends to forestall the presentation of Defendants theory of causation regarding Dr. Jacoby's flying competence. If Plaintiffs attempt to introduce evidence that Dr. Jacoby was a fighter pilot in the Six Day War and that he was shot down, then the Court will not prevent Defendants from using its contrary evidence to demonstrate the falsity of such

6

claims.  Unless Plaintiffs open that door, however, the Court will not allow Defendants to present

evidence of Dr. Jacoby's alleged false statements regarding his war record.  Despite the liberality

of Rule 401, there are limits to what reasonably can be construed as relevant evidence.  Here, the

Court remains unconvinced that Dr. Jacoby's allegedly false war history bears any relevance to

his competence to fly on the day in question.  Defendants are, of course, free to present other

evidence demonstrating Dr. Jacoby's incompetence as a pilot.  Therefore, the Court will grant

Plaintiffs' motion to exclude evidence regarding Dr. Jacoby's alleged war record.


***B. Evidence regarding Dr. Jacoby's pilot's license application***

As noted above, Dr. Jacoby had been prescribed Fiorinal, a migraine headache

medication, for nearly thirty years.  To maintain his pilot's license, he was required to obtain a

medical certification from an aviation medical examiner.  To obtain the medical certification, Dr.

Jacoby had to answer certain questions on a form submitted by the examiner.  From about 1988

through the year of his death in 1999, he "never disclosed on medical forms that he had

headaches or that he had been prescribed Fiorinal, as he should have done."  (Pls.' Br. at 1.)  He

also failed to disclose that he was taking blood pressure medication.  The parties also agree that

"[h]ad he disclosed any of this information, the aviation medical examiner would not have issued

him a medical certificate."  (*Id.*)  Defendants note that Dr. Jacoby operated his plane in violation

of 14 C.F.R. § 61.53, which forbids a pilot from flying if he has reason to know of a medical

condition that would have prevented him from obtaining a medical certificate.  Plaintiffs,

however, assert that the medical examiner would have nonetheless referred him to the FAA to

determine whether he was medically fit to fly and thus Dr. Jacoby's failure to disclose does not

necessarily mean that he would not have a valid pilot's license.

In a separate motion *in limine* (Docket No. 249), Plaintiffs have moved to exclude any expert testimony that Dr. Jacoby had taken Fiorinal or was impaired at the time of the accident. This Court has not yet ruled on that motion and therefore any decision in the instant motion is in part contingent upon how the Court ultimately rules on the other motion. The issue of the instant motion *in limine* (Docket No. 246), however, addresses whether the Court should exclude evidence that Dr. Jacoby failed to disclose his medical conditions in obtaining his medical certificate and whether Dr. James Allen, Dr. Jacoby's aviation medical examiner, should be permitted to testify to certain issues pertaining to his understanding of Dr. Jacoby's condition.

"The duties of pilots and air traffic controllers are prescribed by federal law pursuant to the Federal Aviation Act." *Rodriguez v. United States*, 823 F.2d 735, 739 (3d Cir. 1987); *see also* 49 U.S.C. §§ 1301-1557. The Federal Aviation Administration ("FAA") is authorized to promulgate rules and regulations, which it has done in the form of the Federal Aviation Regulations ("FAR"). *Rodriguez*, 823 F.2d at 739 . "The FARs have the force and effect of law." *Id*. Under New Jersey law, violation of a FAR is treated as evidence that must be considered in determining negligence. *Id*. at 739-40 (citing *Horbal v. McNeil*, 66 N.J. 99, 103-04 (1974)).

Defendants contend that the above cited law mandates that the evidence be admissible. But Plaintiffs argue that the violation of a statute or regulation should only be considered when that violation is the proximate cause of the accident. Indeed, Plaintiffs point to language from *Horbal*, which states that "providing the court is satisfied that a jury could reasonably find proximate relation between the statutory violation and the accident, the jury should be charged

that the statutory violation, if found, should be given consideration . . . along with all the other relevant circumstances." *Horbal*, 66 N.J. at 104. For example, if Dr. Jacoby had violated a FAR while in flight and that violation resulted in the crash, then, Plaintiffs' argument suggests, such a violation would be admissible. Here, however, Plaintiffs argue that Dr. Jacoby's misrepresentations on his medical forms have no probative value as to the proximate cause of the plane crash and therefore the evidence is inadmissible because it is irrelevant.

The Court notes that Plaintiffs have indicated that they will offer evidence of Dr. Jacoby's "experience and competency as a pilot[, e.g.,] the licenses that he held." (Pls.' Reply Br. at 3.) Furthermore, Plaintiffs argue that "[e]vidence that Dr. Jacoby was a competent and experienced pilot, possessing the requisite licenses and qualifications, is not refuted by evidence that he did not make disclosures on his medical forms." (*Id.*) This Court disagrees.

While the Court views this as a close call, the liberal admissibility of the Federal Rules of Evidence militate in favor of allowing this kind of evidence because a jury might otherwise be misled by the non-existence of such a fact. That is, the Court has already ruled that evidence of Dr. Jacoby's Fiorinal usage will be admitted; therefore, the jury might improperly assume that because Dr. Jacoby had a "valid" pilot's license, the usage of Fiorinal will be deemed completely inconsequential. In other words, the jury could reasonably assume that if the FAA allowed him to fly knowing he had been taking this barbituate-containing drug for many years, then the drug must not be dangerous enough to have proximately caused the accident. The Court views such hiding of the ball from the jury as too heavy a thumb on the scale in Plaintiffs' favor.

In essence, Plaintiffs incorrectly frame this debate as one of admissibility. Instead, the issue is really one of weight rather than admissibility. For example, Plaintiffs argue that

"regulations requiring him to disclose his use of the medication in medical examinations

conducted in the past do not prove that his use of the medication on or about November 26, 1999

was the proximate cause of the accident."  (Pls.' Reply Br. at 8.)  The Court agrees that the

violation is not *per se* negligence, but the violation need not definitively prove to be the

proximate cause just to be admissible.  Rather, as the New Jersey Supreme Court noted in

*Horbal*, "[w]hat probative weight, if any, [the jury] may wish to accord that violation [of a

statute] is a matter for the jury's assessment."  *Horbal*, 66 N.J. at 104.  Plaintiffs clearly can

attack the evidence of Dr. Jacoby's failure to disclose his medical conditions and attempt to

minimize its importance as such relates to a determination of causation.  But that does not change

the fact that the jury should be permitted to assess such evidence and determine for itself whether

Dr. Jacoby's fraudulently-obtained medical certificate would have prevented him from obtaining

his pilot's license and certifications such that it rendered him sufficiently unqualified–or at least

less qualified than the picture to be painted by Plaintiffs–as to contribute to the likelihood that he

is at fault for the crash.

     In other words, Dr. Jacoby's FAR violation of months or years prior may have less weight

with the jury than a FAR violation on the day in question that more clearly caused the crash.  But

the fact of a FAR violation is certainly relevant under Federal Rule of Evidence 401.  That is, the

Federal Aviation Regulations set forth certain criteria to be qualified to pilot aircraft.  Failure to

meet a single criterion can mean an applicant is not qualified.  Lack of qualifications, therefore,

reasonably can be interpreted as acting negligently.  That is one of the reasons that New Jersey

allows, indeed requires, consideration of a statutory violation in assessing a party's negligence.

*See Horbal*, 66 N.J. at 104 ("The jury does not have an option totally to ignore, or to refuse even

to give consideration to the fact of a violation of a relevant statute."). The FAR at issue, 14 C.F.R. § 61.53, is certainly relevant to the question of whether Dr. Jacoby was properly qualified to fly a plane. As a result, the Court finds that the evidence regarding Dr. Jacoby's failure to disclose his medical conditions–including migraine headaches, Fiorinal, and blood pressure medication–should not be excluded.

Finally, in the same motion *in limine* (Docket No. 246), Plaintiffs seek to exclude the testimony of Dr. James Allen, Dr. Jacoby's aviation medical examiner, on the basis that his testimony regarding Dr. Jacoby's omissions would be irrelevant and inadmissible. Defendants, however, declare in their opposition brief that Dr. Allen will testify about his relationship with Dr. Jacoby in regards to Dr. Allen's aeromedical evaluation that enabled Dr. Jacoby to obtain his FAA-required medical certificate. Defendants also assert that Dr. Allen will testify as to why Dr. Jacoby would have been denied a medical certificate had he disclosed his medical condition and drug usage. Essentially, Defendants contend, Dr. Allen is being called as a fact witness, not an expert, and thus should be permitted to testify within the scope of his knowledge as Dr. Jacoby's medical examiner.

The Court agrees with Defendants and will permit Dr. Allen to testify as a fact witness within the scope of his knowledge. But the Court cautions Defendants to refrain from eliciting testimony that goes beyond that scope. While the Court finds that Dr. Allen's testimony, as denoted in Defendants' brief, is admissible, the Court will not foreclose Plaintiffs from objecting at trial to questions, or testimony, that attempt to go beyond the scope of Dr. Allen's knowledge as a *fact* witness as it pertains to Dr. Jacoby and the facts of this case.

The Court hastens to note that this ruling depends in part on this Court's resolution of

11

Plaintiffs' motion *in limine* (Docket No. 249), which seeks to exclude any expert testimony that Dr. Jacoby had taken Fiorinal or was impaired at the time of the accident.  If the Court ultimately grants Plaintiffs' motion in that regard, the Court will revisit the ruling of the instant motion.

### C. Use of deposition testimony at trial

Plaintiffs also have moved *in limine* (Docket No. 243) for the exclusion of deposition testimony of certain of Defendants' witnesses, if Defendants refuse to produce such witnesses live at trial.  In particular, Plaintiffs want S-TEC to produce certain current or former employees, namely Ruthie Brookins, Scott Howard, Billy Maddux, Janace Masterson, Kenneth Poynor, Rodney Sinclair, David Carabajal, Raymond Glover, and Gary Massiello (hereinafter "S-TEC Employees").  In addition, Plaintiffs want the Government to produce its employee Kenneth C. Symons and two of its experts, Stephen Veronneau and Dennis Canfield.  All of the above named individuals, save one, live more than 100 miles from Newark, New Jersey.

Pursuant to Federal Rule of Civil Procedure 32(a)(3)(B), the deposition of a witness may be used by any party for any purpose if the court finds that the witness is located greater than 100 miles from the place of trial.  Fed. R. Civ. P. 32(a)(3)(B).  Plaintiffs argue that, in addition to Rule 32(a)(3)(B), Federal Rule of Evidence 804(b)(1) requires that deposition testimony may only be admitted if the declarant is unavailable, as defined in Rule 804(a)(5).  Plaintiffs then make a lengthy argument about how the S-TEC employees are not considered unavailable due to the fact that they are S-TEC's agents/employees.  Plaintiffs' argument is unavailing.

As the Third Circuit expressly noted:

The Advisory Committee Notes accompanying Fed. R. Evid. 802

12

> state explicitly that Fed. R. Civ. P. 32 constitutes an independent exception to the hearsay rule. . . . The exceptions to the requirement of oral testimony at trial appearing in Rule 32 and in the Federal Rules of Evidence are cumulative. Thus, even though a deposition does not fall within the exceptions to the hearsay rule set forth in Rule 804 of the Federal Rules of Evidence, it is admissible if it falls within the provisions of Rule 32(a)(3).

*In re Bankers Trust Co.*, 752 F.2d 874, 888 n.17 (3d Cir. 1984); *see also United States v. Vespe*, 868 F.2d 1328, 1338-39 (3d Cir. 1989).  In other words, unavailability as articulated in Rule 804 is irrelevant to the question at hand.  Instead, "[d]istance is the decisive criterion: so long as a witness is shown to be more than one hundred miles from the place of trial, the admissibility of deposition testimony under the aegis of Rule 32(a)(3)(B) is not contingent upon a showing that the witness is otherwise unavailable."  *Daigle v. Me. Med. Ctr., Inc.*, 14 F.3d 684, 691-92 (1st Cir. 1994).  As the First Circuit also noted, "Rule 32(a)(3)(B) is more permissive than Federal Rule of Evidence 804(a)(5), which requires the party seeking to admit the deposition testimony to show that it was unable to procure the attendance of the defendant through 'process or other reasonable means.'"  *Carey v. Bahama Cruise Lines*, 864 F.2d 201, 204 n.2 (1st Cir. 1988).

S-TEC is located in Mineral Wells, Texas, and all of the S-TEC employees named by Plaintiffs were deposed in Texas by Plaintiffs' counsel.  The Government's experts, Veronneau and Canfield, work and reside in Oklahoma City, Oklahoma, and were deposed there by Plaintiffs' counsel.  Only Kenneth C. Symons, the only Government employee at issue, resides within 100 miles of the place of trial and the Government concedes that his deposition could not be used under Rule 32.  Except Symons, every individual at issue in the instant motion *in limine* qualifies under Rule 32(a)(3)(B) such that either party may utilize their deposition testimony for any purpose at trial.

13

The crux of Plaintiffs' argument for exclusion is that a court's decision to disallow the use of depositions even when an individual qualifies under Rule 32(a)(3)(B) is somehow discretionary.  Specifically, Plaintiffs argue that "[c]ourts have not disregarded all reality as to availability and automatically admitted depositions into evidence based solely upon the location of the deponent."  (Pls.' Reply Br. at 2.)  In support of that proposition, Plaintiffs quote the Tenth Circuit, which noted that "the district court was not automatically required to admit the deposition testimonies under Federal Rule of Civil Procedure 32(a)(3)(B) just because the witnesses were more than 100 miles away as the plaintiffs appear to argue."  *Polys v. Trans-Colorado Airlines, Inc.*, 941 F.2d 1404, 1410 (10th Cir. 1991).  The Government, in *Ueland v. United States*, 291 F.3d 993, 997 (7th Cir. 2002), used that exact same quotation to support the same argument Plaintiffs make here.  The *Ueland* court, however, declared that "[t]hat language has been quoted out of context."  *Ueland*, 291 F.3d at 997.  The Seventh Circuit explained that "[t]he district court [in *Ueland*] excluded some proffered evidence, and the proponent did not make an offer of proof.  Thus the decision was reviewable only for plain error. . . . The [Tenth Circuit's] point was that Rule 32(a) does not work 'automatically' in the sense that it relieves lawyers of their obligation to make an offer of proof.  That's not a problem in our case."  *Id*.  Nor is it a problem in this case.  Here, no party denies that the individuals at issue are located more than 100 miles away and therefore this Court is satisfied with the offered proof.

Moreover, this Court can find no discretion granted to the Court within the text of Rule 32(a)(3)(B).  That is, the rule states that "the deposition of a witness . . . *may* be used by any party for any purpose if the court finds" that the witness is more than 100 miles away.  Fed. R. Civ. P. 32(a)(3)(B) (emphasis added).  Clearly the discretion is left to the *party*, not the court.  A party is

not required to use deposition testimony in place of having the person testify live at trial, but Rule 32(a)(3)(B) certainly gives the party that option and nothing within the rule gives discretion to the court.

The law regarding admission of depositions under Rule 32(a)(3)(B) is clear and unambiguous and was so at the time Plaintiffs took the depositions in Texas and Oklahoma. Plaintiffs have not been surprised in this regard.  Therefore, the Court finds, pursuant to Rule 32(a)(3)(B), that Defendants may utilize the designated depositions, with the exception of Kenneth C. Symons's, at trial.


### D. S-TEC witnesses not formally disclosed prior to close of discovery

In another motion *in limine* (Docket No. 240), Plaintiffs seek to exclude nine witnesses that S-TEC identified in its Final Pretrial Order witness list.  Plaintiffs assert that the nine individuals were never formally identified prior to the end of discovery and therefore they must be precluded from testifying at trial.  The individuals at issue are Terry Wilbourne, Joe Moore, Dave Wojnarowski, Mark Flavin, Ed Cameron, Mike McMillan, David Rosengrandt, Neil O'Bannon, and Bob Jones.  Defendants respond that all of the witnesses, except Mike McMillan, were disclosed in one fashion or another.  Mr. McMillan only recently became President of S-TEC in 2004, after discovery closed in June 2003, and thus Defendants assert that failure to disclose him before discovery closed is harmless, or can easily be cured.

Federal Rule of Civil Procedure 26(e)(2) provides:

> A party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete

> or incorrect and if the additional or corrective information has not <u>otherwise been made known to the other parties during the discovery process</u> or in writing.

Fed. R. Civ. P. 26(e)(2) (emphasis added).  The Advisory Committee Notes (1993) to Rule 26(e) clarify the "otherwise" clause requirement:

> There is, however, no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process, <u>as when a witness not previously disclosed is identified during the taking of a deposition</u>.

Fed. R. Civ. P. 26 Advisory Committee Notes (1993 amendments), subdivision (e) (emphasis added); *see Coleman v. Keebler Co.*, 997 F. Supp. 1102, 1107 (N.D. Ind. 1998) (finding disclosure in depositions of previously undisclosed witnesses would not bar use of witnesses at trial, but allowing opposing party opportunity to depose those witnesses); *see also Transclean Corp. v. Bridgewood Servs., Inc.*, 101 F. Supp. 2d 788, 797-98 (D. Minn. 2000) (recognizing Rule 26(e)'s "otherwise" exception, but noting that evidence at issue was never disclosed through other forms of discovery); *Gonsalves v. City of New Bedford*, 168 F.R.D. 102, 110-11 (D. Mass. 1996) (recognizing "otherwise" exception interpretation in Advisory Committee Notes); *Law v. Am. Capital Strategies, Ltd.*, No. 05-0836, 2007 WL 221671, at *8 (M.D. Tenn. Jan. 26, 2007) (refusing to strike certain declarations of individuals because those individuals had been adequately disclosed in prior depositions); *Weiland v. Linear Const., Ltd.*, No. 00-6172, 2002 WL 31307622, at *2 (N.D. Ill. Oct 15, 2002) (denying *in limine* motion seeking to exclude witness whose identity was disclosed in a deposition); *Tlamka v. Serrell*, No. 97-3212, 2002 WL 500656, at *2 (D. Neb. Mar 25, 2002) (recognizing "otherwise" exception regarding depositions, but finding that contested evidence was not otherwise disclosed).

16

Pursuant to Federal Rule of Civil Procedure 37(c), a party that fails to supplement its responses under Rule 26(e)(2) is not, without substantial justification or unless such failure is harmless, permitted to use such undisclosed evidence at trial.  Fed. R. Civ. P. 37(c).  The Third Circuit, however, noted in *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) that "the exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence."  *Konstantopoulos*, 112 F.3d at 719 (quoting *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.3d 894, 905 (3d Cir. 1977)).

The Third Circuit, in *Nicholas v. Pennsylvania State University*, provided guidance for assessing what constitutes a harmless failure to disclose under Rule 37(c).  227 F.3d 133 (3d Cir. 2000).  Specifically, the court provided a four-factor rubric: (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or wilfulness in failing to comply with a court order or discovery obligation.  *Id.* at 148; *see also Konstantopoulos*, 112 F.3d at 719.

In the instant matter, Defendants assert that five of the nine individuals were disclosed during the course of depositions of other S-TEC employees and therefore Defendants had no duty to formally disclose them in another fashion.  In other words, according to Defendants, these five individuals come under the "otherwise" clause of Rule 26(e)(2).

On July 24, 2002, Plaintiffs deposed S-TEC employee Allen Bret Miller in Texas, resulting in the following colloquy between the deponent, Plaintiffs' attorney Mr. Smith, and

17

Defendant S-TEC's attorney Mr. Zeehandelaar:

> Q [by Mr. Smith]      Does S-TEC have any other business locations
>                       other than Mineral Wells, Texas?
> A.                    No.
> Q.                    How long has S-TEC been in existence?
>
> MR. ZEEHANDELAAR: Well, just by way of fairness, I think the
>       term business location may be somewhat ambiguous.  If
>       you'd like to ask are there any employees – perhaps I could
>       suggest, Counsel, you ask, are there any employees located
>       anywhere besides Mineral Wells, Texas, and I think you'll get
>       a little more information.
>
> Q. (BY MR. SMITH) Okay.    Are  there any employees located
>                       outside of Mineral Wells, Texas that work for
>                       S-TEC Corporation?
> A.                    Yes.
> Q.                    And where do they work and what are their
>                       names?
> A.                    They work in Vero Beach, Florida at Piper
>                       Aircraft – the new Piper Aircraft Company,
>                       which is a customer of ours.  And they are on-
>                       site employees that we employ.  That's Shawn
>                       Kelley and Neil [sic] O'Bannon.
>
> MR. ZEEHANDELAAR: The reason I bring it up is whether that's
>       considered a business location or not is perhaps subject to
>       debate.  I want his testimony to be full and clear.

(Allen Brett Miller Dep. at 11:10-12:7.)  This illustrative colloquy clearly demonstrates that S-

TEC was not trying to hide the ball.  Defense counsel went so far as to interrupt the questioning

and suggest to Plaintiffs' counsel a different question that might get a fuller and fairer answer.

After that suggestion, the deponent revealed the name of Neal O'Bannon, one of the individuals

at issue in the instant motion.  In addition, nearly one year later, on June 2, 2003, Plaintiffs

deposed Janace Masterson in Texas, who also mentioned Neal O'Bannon's name in response to a

direct question by Plaintiffs' counsel.  *See* (Janace Masterson Dep. at 122:22-123:6.)  Moreover,

18

Neal O'Bannon's name was clearly listed on an S-TEC organizational chart disclosed to Plaintiffs. The Court finds that while Neal O'Bannon's name should have been formally disclosed by S-TEC earlier, the revelation of O'Bannon's name in two depositions and the organizational chart qualifies as having been "otherwise . . . made known to the other parties during the discovery process." Fed. R. Civ. P. 26(e)(2). Therefore, the Court will deny Plaintiffs' motion to exclude Neal O'Bannon. The Court will allow Plaintiffs to depose Neal O'Bannon, but, despite Plaintiffs' request, the Court will not grant associated costs or fees.

As with Neal O'Bannon, four others were also disclosed in the course of deposition testimony. For example, in response to Plaintiffs' counsel's question "[w]ho would be the most knowledgeable people about technical knowledge of autopilot systems at S-TEC today?," the deponent, James Irwin, replied: "Different engineers work on different systems. . . . Dave Rosengrant [sic] is a design engineer." (James L. Irwin Dep. at 191:17-192:2.); *see also* (James L. Irwin Dep. at 117:2-7; 118-2-4; 133:7-10; 238:3-9; 270:19-22 (mentioning or discussing Ed Cameron)); (William Lee Shields Dep. at 14:9-15:19 (discussing Ed Cameron)); (James Craig Weaver Dep. at 28:5-7 (mentioning Ed Cameron as Weaver's quality assurance predecessor)); (Allen Brett Miller Dep. at 50:17-52:11 (naming Ed Cameron and Bob Jones as individuals with a "potential financial interest in this case")); (Allen Brett Miller Dep. at 71:9-10; 76:13-15 (identifying Bob Jones as head of the sales department and in charge of customer service prior to Mr. Tolleson)); (Dennis Wayne Tolleson Dep. at 10:14-11:4 (identifying Bob Jones as director of customer service prior to Tolleson)); (James L. Irwin Dep. at 270:19-22 (mentioning Joe Moore)).

The Court has thoroughly reviewed the deposition testimony of the above cited

19

individuals and is satisfied that while the names of Ed Cameron, Joe Moore, David Rosengrandt, and Bob Jones should have been disclosed more formally at an earlier time, they were all sufficiently disclosed in the various depositions to have satisfied the notice requirements of Rule 26(e)(2).  Moreover, utilizing the *Nicholas* factors, the Court finds that the failure to disclose was not wilful or in bad faith, and any prejudice can be cured by allowing Plaintiffs to depose these individuals.  *See Nicholas*, 227 F.3d at 148; *see also Konstantopoulos*, 112 F.3d at 719. Therefore, the Court will deny Plaintiffs' motion to exclude Ed Cameron, Joe Moore, David Rosengrandt, and Bob Jones from testifying at trial.

Mark Flavin's name appears on S-TEC's January 16, 2003 organizational chart. Specifically, Flavin's name is listed on the Autopilot Engineering organizational chart as the "Supervisor, Project Manager."  Plaintiffs deposed Flavin's immediate supervisor, Ron Tesdal, and Flavin's immediate subordinate, Billy Maddux.  Plaintiffs clearly were familiar with the organizational chart as evidenced by Plaintiffs' counsel's May 16, 2003 letter in which counsel states "[a]lthough we also noticed Barbara Pierson, who is in S-TEC's January 2003 organizational chart, as a requested deponent, this letter confirms that you have advised us that she is now deceased."  (Zeehandelaar Decl., Exh. 6.)  Notably, Barbara Pierson is listed on perhaps the most illegible organizational chart, "Production," and is listed three tiers down in the "turn coordinator" hierarchy as a "Phase Out Tech."  As a result, the Court is satisfied that Plaintiffs were sufficiently familiar with the chart, and thus Mark Flavin's existence, that S-TEC did not need to more formally disclose him.  Nevertheless, the Court will allow Plaintiffs to depose Flavin.  Therefore, the Court will deny Plaintiffs' motion to exclude Flavin.

In early 2004, S-TEC was sued in Georgia state court, and subsequently federal court, in

four actions, based upon an accident in that state involving an airplane containing a different S-TEC autopilot system than the one at issue here.  The plaintiffs in that action deposed a non-party witness named Terry Wilbourne, who S-TEC currently describes somewhat vaguely as the individual who "apparently installed the autopilot in the . . . aircraft."  (S-TEC's Opp. Br. at 9.) The cases arising out of the Georgia accident were subsequently voluntarily dismissed by the plaintiffs.  S-TEC disclosed all pleadings from the Georgia action to the Plaintiffs in the instant matter.  S-TEC asserts that during the course of the Georgia litigation, it learned that one of the experts for the Georgia plaintiffs was the same as one of the experts for the Plaintiffs in this action; Mr. Edwards, the expert, allegedly knew of Terry Wilbourne.  Therefore, S-TEC argues, Plaintiffs in the instant matter should have known of Wilbourne's existence and thus S-TEC was not required to disclose Wilbourne earlier.

With respect to Terry Wilbourne, the Court concludes that Plaintiffs have the better argument insofar as S-TEC should have disclosed the witness's existence before listing him on the Final Pretrial Order witness list.  It appears, however, that S-TEC was not aware of Wilbourne prior to the 2004 Georgia litigation, whereas discovery in the instant matter ended in June 2003.  Therefore, it would have been impossible for S-TEC to have disclosed Wilbourne prior to completion of discovery.  Nevertheless, Rule 26(e)(2) requires parties to timely supplement their disclosures and waiting until the Final Pretrial Order in April of 2006 does not constitute timely.  As a result, the Court finds that S-TEC's failure to disclose constitutes surprise and prejudice against Plaintiffs.  *See Nicholas*, 227 F.3d at 148.  Based upon the parties' representations, however, the Court cannot conclude that S-TEC's failure to disclose earlier amounts to wilfulness or bad faith.  *See id.*  The Court also believes that with more than six

21

months remaining before trial, the prejudice to Plaintiffs can be cured by allowing them to take Wilbourne's deposition.  *See id*; *see also Konstantopoulos*, 112 F.3d at 719.  Therefore, the Court will deny Plaintiffs' motion to exclude Terry Wilbourne from testifying at trial.  The Court notes, however, that S-TEC "does not intend to call Terry Wilbourne as a witness unless Plaintiffs are allowed to offer evidence concerning" the Georgia accident.  (S-TEC's Opp. Br. at 9.)  The Court acknowledges that S-TEC has filed a motion *in limine* to exclude any evidence regarding the Georgia accident or lawsuits.  That motion will be decided subsequent to the instant motion and thus the Court expects S-TEC to abide by its representation to not call Wilbourne if the Georgia evidence is later excluded by this Court.

With respect to witness Dave Wojnarowski, S-TEC argues that his name and existence were sufficiently disclosed to Plaintiffs by way of an "S-TEC Corporation Ship/Return form referencing S-TEC dealer, Aerotronics Services, Inc." on which "Dave" was listed as the contact person for Aerotronics.  (S-TEC's Opp. Br. at 8.)  S-TEC further argues that it sufficiently disclosed Wojnarowski in the form of a Maintenance Log of the accident aircraft on which a "D.W. . . . signed off on this entry, " but which signature S-TEC acknowledges "is not very legible."  (*Id.*)

S-TEC's argument in this regard dangerously flirts with the absurd.  If S-TEC's argument is countenanced, Rule 26(e)(2) would cease to have any reasonable meaning.  At best, the argument is a post-hoc rationalization.  The Court is convinced that S-TEC's failure to disclose Dave Wojnarowski would work a prejudice on Plaintiffs.  *See Nicholas*, 227 F.3d at 148.  While Plaintiffs could conceivably depose Wojnarowski and thereby cure the prejudice, the Court finds that S-TEC's failure to disclose this particular witness amounts to bad faith or wilfulness.  *See id*;

22

*see also Konstantopoulos*, 112 F.3d at 719.  Therefore, the Court will grant Plaintiffs' motion to exclude Dave Wojnarowski from testifying at trial based upon S-TEC's failure disclose.

Finally, Mike McMillan became President of S-TEC in late 2004, over a year after the close of discovery.  Clearly, S-TEC could not have disclosed him earlier, but there remains the issue of whether he should have been disclosed prior to the Final Pretrial Order of April 2006.  S-TEC contends that McMillan's becoming President of S-TEC "is a matter of public record and [therefore] S-TEC is entitled to call [him] as a witness."  (S-TEC Opp. Br. at 7.)  The Court understands that S-TEC is not listed on any public exchange and while that fact is not necessarily dispositive, it does weigh against any *per se* finding that McMillan's ascension to the S-TEC presidency is somehow public record.  Even if it were public knowledge, that does not relieve S-TEC from properly disclosing him earlier than it did.  As a result, the Court finds that S-TEC's failure to disclose McMillan constitutes surprise, but that surprise can easily be cured by allowing Plaintiffs to take his deposition.[2]  *See Nicholas*, 227 F.3d at 148.  Furthermore, the Court is unconvinced that S-TEC acted in bad faith or with wilfulness with respect to the non-disclosure of McMillan.  *See id*; *see also Konstantopoulos*, 112 F.3d at 719.  Therefore, the Court will deny Plaintiffs' motion to exclude Mike McMillan from testifying at trial.

---

[2] The Court notes that Plaintiffs chose not to depose McMillan's predecessor.

23

*Conclusion & Order*

For the foregoing reasons, it is hereby ORDERED that:

1. Plaintiffs' motion *in limine* (Docket No. 233) to exclude evidence of Itzhak Jacoby's Israeli military record is GRANTED.

2. Plaintiffs' motion *in limine* (Docket No. 246) to exclude evidence regarding Itzhak Jacoby's failure to disclose his medical conditions and to exclude Dr. James Allen from testifying is DENIED.

3. Plaintiffs' motion *in limine* (Docket No. 243) to exclude deposition testimony of certain Defendants' witnesses located more than 100 miles away, pursuant to Federal Rule of Civil Procedure 32(a)(3)(B), is DENIED as to Ruthie Brookins, Scott Howard, Billy Maddux, Janace Masterson, Kenneth Poynor, Rodney Sinclair, David Carabajal, Raymond Glover, Gary Massiello, Stephen Veronneau and Dennis Canfield AND GRANTED as to Kenneth C. Symons.

4. Plaintiffs' motion *in limine* (Docket No. 240) to exclude nine witnesses from testifying who were not formally disclosed by S-TEC is DENIED as to Terry Wilbourne, Joe Moore, Mark Flavin, Ed Cameron, Mike McMillan, David Rosengrandt, Neil O'Bannon, and Bob Jones AND GRANTED as to Dave Wojnarowski.  Furthermore, it is hereby ORDERED that Plaintiffs have an opportunity to depose Terry Wilbourne, Joe Moore, Mark Flavin, Ed Cameron, Mike McMillan, David Rosengrandt, Neil O'Bannon, and Bob Jones.

Newark, New Jersey
Dated: February 14, 2007

/s/ Harold A. Ackerman
U.S.D.J.