NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE: JACOBY AIRPLANE CRASH LITIGATION | Hon. Harold A. Ackerman <br><br> Civ. No. 99-6073 (HAA) <br><br> **OPINION & ORDER** |

**ACKERMAN**, Senior District Judge:

This matter comes before the Court on Plaintiffs' motion to exclude Defense Exhibit 228 (Docket No. 433). For the following reasons, the Court denies Plaintiffs' motion.

*Background*

On November 17, 2003, Defendant S-TEC's expert witness, Mr. Eggspuehler submitted an expert report stating that he "conducted flight evaluations in an exemplar Beechcraft Bonanza equipped with an S-TEC 60-2 autopilot." (*See* Exhibit 1 to Zeehandelaar Decl., Eggspuehler Report.) Approximately six months later, Mr. Eggspuehler gave additional notice of his videotape when he stated that Bruce Goodman videography accompanied him on his exemplar Beechcraft flight. (*See* Exhibit 2 to Zeehandelaar Decl., Eggspuehler Dep., pp.22-23.) Further, the Final Pretrial Order, filed with this Court on December 14, 2006, lists the "Eggspuehler videotape" as Exhibit 228.

In this video, Mr. Eggspuehler is videotaped from the back of the aircraft cabin as he

pilots a Beechcraft Bonanza plane at over 4,000 feet. The viewer effectively sees over the pilot's shoulder and has both a view of the instrument panel and a view out the front windshield of the airplane. Mr. Eggspuehler was videotaped while flying in visual flight rules. Thus, Mr. Eggspuehler and the viewer can discern the ground below the airplane and the horizon. The video is divided into two parts. In the first part, Mr. Eggspuehler provides a general overview of the piloting instruments. This first part is not seriously contested by Plaintiffs, about which they concede that S-TEC's characterization "might be [ ] fair." (Pls.' Reply Br. at 2.) In the second part of the video, Mr. Eggspuehler utilizes the piloting instruments as one of his associates sitting next to him in the plane creates some unknown problem resulting in the plane turning either left or right contrary to the pilot's setting on the autopilot.

*Analysis*

Plaintiffs object to the admission of the video in large reliance on this Court's September 28, 2007 Opinion. In that Opinion, I barred the admission of Plaintiffs' expert witness Dr. McSwain's so-called "drop test" because Dr. McSwain's video transcended a mere demonstrative and more closely resembled an unfairly prejudicial re-enactment of the disputed accident. My concern in reaching that conclusion was heightened by the late date and genesis of Plaintiffs' proffer, which impugned on S-TEC's ability to depose Dr. McSwain on the methodology he used in performing the test.

Here, S-TEC counters on two primary grounds. First, S-TEC draws a contrast between Dr. McSwain's late test, and the near-four years' notice given to Plaintiffs by S-TEC of Mr. Eggspuehler's video. Second, S-TEC argues that Mr. Eggspuehler's video is admissible as a

2

demonstrative aid for Mr. Eggspuehler's trial testimony that is materially different from Dr. McSwain's inadmissible "drop test." I need not reach S-TEC's third argument - that Plaintiffs opened the door to the admissibility of the video - because I accept S-TEC's primary arguments.

In my September 28 Opinion, I relied in part on *Muth v. Ford Motor Co.*, 461 F.3d 557 (5th Cir. 2006) where the Fifth Circuit found that a proffered demonstrative misleadingly resembled the accident at issue so as to constitute an unfairly prejudicial re-enactment. As I described in my previous Opinion, the Fifth Circuit in *Muth* explained that "when the demonstrative evidence is offered only as an illustration of general scientific principles, not as a re-enactment of disputed events, it need not pass the substantial similarity test, but such demonstrative aids, however, must not be misleading in and of themselves." 461 F.3d at 566. Ultimately, the Fifth Circuit held that the similarities between Ford's theory of the accident and the conditions of the test amplified the evidence's prejudicial effect. I then analogized to Dr. McSwain's "drop test," which I found to resemble the disputed accident too closely to warrant its admission.

For support, Defendant S-TEC points to *Jones v. Kearfott Guidance & Navigation Corp.*, No. 93-64, 1998 U.S. Dist. LEXIS 21489 (D.N.J. Nov. 17, 1998) where Judge Debevoise admitted a demonstrative exhibit in a products liability trial resulting from a helicopter crash. There, the defendant sought to introduce a videotape of a computer animation to be used by the defendant's expert to explain his opinions on causation and demonstrate his opinion to the jury. Judge Debevoise observed that there is a "fine line between a re-creation of an accident and an illustration of a witness's testimony." *Id.* at *14. This distinction, Judge Debevoise elucidated, is the "difference between a jury believing that they are seeing a repeat of the actual event and a

jury understanding that they are seeing an illustration of someone else's opinion." *Id.* Ultimately, Judge Debevoise determined that the video was more illustrative than re-enactive because it "present[ed] the jury with its expert's theory on the cause of the accident." *Id.* at *16. For safe measure, Judge Debevoise instructed the jury that the video was not a re-creation.

  I believe *Jones* is apropros.  First, Mr. Eggspuehler's piloting video differs from *Muth* and Dr. McSwain's "drop-test" because Mr. Eggspuehler's video is not substantially similar so as to resemble a re-enactment of a disputed cause of the accident.  As noted by both parties, the conditions in the video are visual flight rules, not instrument conditions as in Dr. Jacoby's fatal flight; and Mr. Eggspuehler is piloting at almost twice the altitude that Dr. Jacoby flew at pre-impact.  These two facts - instrument conditions and insufficient altitude, absent in Mr. Eggspuehler's video, are critical to Plaintiffs' case and illustrate the relative dissimilarity of Dr. Jacoby's and Mr. Eggspuehler's flights.  *See Szeliga v. Gen. Motors Corp.*, 728 F.2d 566, 567 (1st Cir. 1984) ("Dissimilarities between experimental and actual conditions affect the weight of the evidence, not its admissibility."); *Russo v. Mazda Motor Corp.*, No. 89-7955, 1992 WL 309630, *2 (E.D. Pa. Oct. 19, 1992) ("[W]hen a party seeks to introduce photographs, films, and videotapes of experiments or demonstrations, not as a recreation or representation of how an accident actually happened, but instead to illustrate general principles of physics, for example, courts do not impose a substantial similarity requirement.")  Thus, S-TEC is not proffering Mr. Eggspuehler's video to reenact the critical causal issues supporting Plaintiffs' case.

  Second, unlike Dr. McSwain's "drop test," which I found served as a re-enactment, Mr. Eggspuehler's video offers a visual demonstration of his testimony, namely, the functioning of piloting instruments and S-TEC's theory of Dr. Jacoby's flight activity.  *See Jones*, 1988 U.S.

Dist. LEXIS at *16 ("A theory or hypothesis that contradicts one propounded by an opposing party does not become misleading merely because it sets forth a different perspective."). S-TEC is entitled to present its theory of the case, supplemented by a demonstration supporting that theory.

Moreover, Plaintiffs' reliance on my September 28 Opinion overlooks the import of the timeliness issue in my rendering Dr. McSwain's testimony inadmissible. S-TEC argues that "[u]nlike the McSwain footage, Defendant did disclose the Eggspuehler videotape well before the close of discovery and prior to Mr. Eggspuehler's deposition, as early as 2003." (S-TEC's Br. at 2.) Plaintiffs counter that "the Court's decision [of September 28, 2007] was based in part on one consideration and in part on another[, yet] does not affect the force of either consideration." (Pls.' Reply Br. at 1.) In other words, Plaintiffs argue that, despite the genuine contrast between Dr. McSwain's late test and Mr. Eggspuehler's more timely video, my September 28, 2007 Opinion did not place dispositive weight on the timeliness issue. I disagree.

In my September 28 Opinion, I found Dr. McSwain's belated proffer troublesome "especially considering S-TEC's lack of opportunity to depose Dr. McSwain on the methodology he used in performing the drop test." (Trial Tr., Vol. 3, Sept. 28, 2007, 149:11-14.) Thus, my reasoning for barring Dr. McSwain's video rested in persuasive part on the unfairly prejudicial effect Plaintiffs' late timing would have on S-TEC's ability to challenge Dr. McSwain's purported methodologies.

Here, I have no similar concern. Plaintiffs state that S-TEC "never disclosed that the video referenced by Mr. Eggspuehler would be in the nature of a re-enactment of the events at issue in this litigation." (Pls.' Reply Br. at 1.) Plaintiffs elaborate in a footnote that "Mr.

5

Eggspuehler could not provide very many details of his flights during his deposition." (Pls.' Br. at Note 1.) However, as I recited earlier in this opinion, Plaintiffs knew about Mr. Eggspuehler's video for almost four years, and had notice yet again of it in the Final Pretrial Order. That Plaintiffs complain that they did not know the video would be a "re-enactment" is immaterial, for one, because S-TEC never conceived the video to be a re-enactment - a point I agree with today. From its genesis, Mr. Eggspuehler's video could certainly have been perceived at least as a demonstrative because his deposition testimony makes that intention obvious. For instance, in Mr. Eggspuehler's deposition, when asked by Plaintiffs "what flight maneuvers relative to this accident" he remembered, he said "[t]he only thing I can tell you is that, I recall pointing out the relevance of the various instruments and what they tell you." (Dockets No. 440-42, Zeehandelaar Decl. Ex. 2, Eggspuehler Dep. At 27:9-26.) In addition, Plaintiffs asked if Mr. Eggspuehler remembered "any more about any of the maneuvers that you flew on any of these two occasions." (Eggspuehler Dep. at 28:12-15.) It is apparent, then, that Plaintiffs knew about Mr. Eggspuehler's flight. Thus, unlike the case with Dr. McSwain's "drop-test," Plaintiffs' considerable notice of Mr. Eggspuehler's video provided Plaintiffs with ample time to challenge Mr. Eggspuehler's methodologies, and draws an important distinction from my September 28 Opinion.

      Mirroring Judge Debevoise's cautious charge in *Jones*, I believe a jury instruction limiting the jury's consideration of Mr. Eggspuehler's video to a demonstrative exhibit is warranted. *See Jones*, 1998 U.S. Dist. LEXIS, at *14 ("To avoid any likelihood of prejudice and to reduce the possibility that the jury might interpret the videotapes to be re-creations of the accident, I will instruct the jury at the time [the defendant] seeks to introduce the animations that

the videos are not meant to be a re-creation of the accident but simply computer pictures to help them understand the opinions and testimony of [their expert."); *see also Datskow v. Teledyne Cont'l Motors Aircraft Prods.*, 826 F. Supp. 677, 686 (W.D.N.Y. 1993) ("So long as that distinction [between a re-enactment and a demonstration] is made clear to [the jury] - as it was here - there is no reason for them to credit the illustration any more than they credit the underlying opinion.")

I will deny Plaintiffs' motion to exclude Defendants' Exhibit 228, and I will issue an appropriate instruction prior to S-TEC's introduction of Mr. Eggspuehler's video.

### *Conclusion & Order*

For the foregoing reasons, Plaintiffs' motion (Docket No. 433) is hereby DENIED.

Newark, New Jersey
Dated: November 1, 2007

/s/ Harold A. Ackerman
U.S.D.J.